UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>SHAW ENVIRONMENTAL & INFRASTRUCTURE, INC., et al.,<br><br>Defendants. | Case No. 14-cv-01509-SK<br><br>**NOTICE OF QUESTIONS FOR HEARING** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING QUESTIONS FOR THE HEARING SCHEDULED ON SEPTEMBER 9, 2024, at 9:30 A.M.  The Court intends to address the questions below at the hearing.  The Court advises the parties that it will not accept written answers to these questions.

The parties shall be prepared to address the following questions at the hearing:

(1) When Judge Donato reopened this case against Shaw Environmental & Infrastructure, Inc., Chicago Bridge & Iron Company N.V., Aptim Federal Services, LLC, and Aptim Corporation (the "Shaw Defendants"), the Order was very clear that the dismissal order was still in effect as to Tetra Tech EC, Inc., Tetra Tech, Inc, IO Environmental & Infrastructure, Inc., and Radiological Survey & Remedial Services, LLC.  (Dkt. No. 205.)  Judgment was then entered with respect to Tetra Tech EC, Inc., Tetra Tech, Inc, IO Environmental & Infrastructure, Inc., and Radiological Survey & Remedial Services, LLC.  (Dkt. No. 206.)  However, the Order did not address the individual defendants Daryl DeLong and Brian Henderson.  (Dkt. No. 205.)  In light of the Order only reopening the case with

respect to the Shaw Defendants, it appears that the case remains closed as to these individual defendants and that DeLong and Henderson should be terminated as parties based on Judge Donato's rulings. Is this correct? On what specific entries in the Docket do the parties rely?

(2) Relatedly, Linda Parker Pennington is listed as a plaintiff on the Docket but she is not included as a plaintiff in the operative complaint, Docket Number 61. Is Linda Parker Pennington a current plaintiff in this case or should she be terminated as a party on the Docket? On what specific entries in the Docket do the parties rely?

(3) On what basis do the Shaw Defendants contend that the four news articles disclose a misrepresented state of facts or otherwise disclosed fraud under the public disclosure bar?

(4) Why should the Court consider the news article entitled "Doesn't the Navy know the Boys and Girls Club left toxic Treasure Island" published on July 18, 2014, after the initial complaint was filed? How do the allegations in the initial complaint about the Shaw Defendants' conduct at Hunters Point substantively differ from the later allegations regarding Hunters Point?

(5) The news article entitled "Workers Allege Hunters Point Dirt Needs to Be Screened for Radiation" was first published on February 27, 2014, and was updated on November 30, 2019. Is there a copy of the news article that was first published on February 27, 2014? If so, by when could this copy be filed?

(6) The Shaw Defendants argue that the Exhibits 1 through 3 attached to their request to seal should be considered as documents incorporated by reference in the complaint. (Dkt. No. 127.) If the Court were to consider such documents, why would they not undermine Relator Kevin McLaughlin's ("McLaughlin") allegations on materiality for his claim under the False Claims Act?

(7) If the Court does not find that Exhibits 1 through 3 may be considered on the motion to dismiss as incorporated into McLaughlin's Third Amended Complaint ("TAC"), is there any other evidence that the Navy was informed of Shaw's alleged

2

misconduct that the Court may consider on a motion to dismiss?

(8) On what basis does McLaughlin contend that he may bring a claim under the False Claim Act as an *insider* with respect to Treasure Island at any point or with respect to Hunters Point after he left in August 2012, including Shaw's Final Removal Action Completion Report, Phase II issued in May 2013? (*See* Dkt. No. 61 (TAC), ¶ 120.)

(9) When specifically does McLaughlin allege that Shaw falsely certified to the Navy that it had complied with the environmental statutes and regulations required by its contract?

    a. Where specifically are these allegations in the TAC?

    b. On what basis do the Shaw Defendants contend that McLaughlin failed to allege that Shaw was required to and did certify to the Navy that it complied with the environmental statutes?

(10) When did Shaw made claims for payment to the Navy?

    a. Where specifically are these allegations in the TAC?

    b. On what basis do Defendants contend that McLaughlin failed to allege that certification of compliance was a condition of payment?

(11) If McLaughlin does not allege specifically when Shaw made claims for payment and was paid, why is it not enough for McLaughlin to allege these environmental violations and to allege that Shaw must have submitted claims for payment and must have been paid? Do Defendants actually dispute that Shaw submitted claims for payment and was paid, or that certification of compliance with environmental statutes was required?

(12) Did McLaughlin personally review Shaw's reports or certifications to the Navy?

    a. If so, when?

    b. Where is this alleged in the TAC?

(13) What are the reports McLaughlin discusses in paragraphs 121 and 131 of the TAC? Are these certifications of compliance?

3

(14) Does McLaughlin dispute that Jack Schelebo complained to the Navy about the same alleged misconduct that McLaughlin asserts in his TAC?

(15) What are the dates on which McLaughlin raised his concerns with Shaw management? Where specifically in the TAC does McLaughlin allege such facts?

(16) On August 28, 2024, McLaughlin filed a notice of recent authority, attaching one decision dated July 11, 2024, and another dated August 6, 2024, both dated *before* McLaughlin filed his supplemental brief on August 7, 2024. On what basis should the Court consider this belatedly filed authority?

**IT IS SO ORDERED**.

Dated: September 3, 2024



SALLIE KIM
United States Magistrate Judge